OSCN Found Document:XANADU EXPLORATION COMPANY v. WELCH

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 XANADU EXPLORATION COMPANY v. WELCH
2015 OK CIV APP 92
Case Number: 113340
Decided: 10/09/2015
Mandate Issued: 11/04/2015
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2015 OK CIV APP 92, __ P.3d __

 

XANADU EXPLORATION COMPANY, Plaintiff/Appellant,
v.
GARY WELCH, AN INDIVIDUAL, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
McCLAIN COUNTY, OKLAHOMA

HONORABLE CHARLES GRAY, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Charles B. Davis, Norman, Oklahoma, for Plaintiff/Appellant,
Ted W. Haxel, Purcell, Oklahoma, for Defendant/Appellee.

BRIAN JACK GOREE, PRESIDING JUDGE:

¶1 This action involves the appraisal of surface damages associated with oil and gas drilling pursuant to the Oklahoma Surface Damages Act, 52 O.S. 2011 §§318.2-318.9. Plaintiff/Appellant, Xanadu Exploration Company (Operator), as the unit operator, seeks review of the trial court's order denying Operator's exception to the report of the surface damage appraisers. We affirm the trial court's order to the extent it ruled that the appraisers should consider Owner's entire tract in determining damages, reverse it to the extent it denied Operator's exception to the appraisers' report, and remand with instructions to order a new appraisal in compliance with this opinion.

I. Background

¶2 Operator filed its petition below seeking appointment of surface damage appraisers pursuant to §318.5, alleging it had been unable to reach an agreement with the surface owner, Defendant/Appellee Gary Welch (Owner). Each party nominated an appraiser, and the nominated appraisers selected a third appraiser.

¶3 Owner objected to the legal description in the petition, asserting Operator's operations would affect the value of his property contiguous to the well site. In response, Operator argued the Corporation Commission had appointed it operator of only an 80-acre unit, and the district court had no jurisdiction to alter Operator's authority and responsibility. The trial court found that although it had no authority to alter any drilling and spacing unit, the damages contemplated under §318.5 of the Act were not limited to the legal description of the unit.

¶4 The trial court appointed the three appraisers and instructed them to determine the amount of surface damages that Owner would sustain to his entire tract by reason of Operator's entry on the tract and by reason of drilling and maintenance of oil or gas production in connection with the new well referenced in Operator's petition. The trial court further instructed the appraisers to file a written report that "set forth the quantity, boundaries and value of the property entered onto or to be utilized in said oil or gas drilling, and the amount of surface damages done or to be done to the property." It instructed them that the measure of damages was the difference between the fair market value of the property of the tract immediately before drilling operations and the fair market value of the property of the tract immediately after drilling operations. The trial court also instructed the appraisers to include a map or plat of the boundaries of the affected property. It provided the appraisers a form for their report.

¶5 The appraisers submitted their report on the form provided, stating that the quantity and area of the property subjected to the actions of Operator was "Road & well location damaged 5 acres." They set compensation for the reduction in value to the surface estate by virtue of Operator's drilling operations at $25,000.00. At the end of the report, in handwriting, the appraisers inserted the following language:

Damages are subject to the following:
1) road from highway to location must be graded and leveled.
2) Base ground not used by drill site must [be] restored and reseeded/sodded.
3) Fence and cattle guards at highway entry capable of keeping cattle from getting out onto highway. Also, cattleguard must be adequately installed to allow[] for continued use by heavy [equipment].

The report did not include any map, plat, or other description of the boundaries of the affected area.

¶6 Operator filed exceptions to the appraisers' report, asserting it was defective because it did not set out with specificity the information required by the statute and the hand-written commentary was unauthorized. Operator argued, "Without the specificity required by the statute included in the appraisers' report, the parties are unable to determine the factors used by the appraisers, i.e. quantity, boundaries of the property entered on or to be utilized." Operator contended that the damage appraisal exceeded the fair market value of the five acres affected by the operations. Operator asked the trial court to direct the appraisers to prepare and file a report that was legally sufficient under the statute, or in the alternative to establish damages in a reasonable amount consistent with existing law.

¶7 After a hearing, the trial court denied Operator's exceptions and ordered the appraisal amount deposited with the court. Operator appeals from this order.

II. Standard of Review

¶8 Statutory construction presents a question of law. Arrow Tool & Gauge v. Mead, 2000 OK 86, ¶20, 16 P.3d 1120. We will review questions of law de novo. Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, ¶5 n.1, 932 P.2d 1100.

III. Analysis

A. Surface Area Subject to Damage Appraisal

¶9 Operator contends the trial court erred by including Owner's entire tract in the area to be appraised for damages. The Act does not limit the damage appraisal to the leased or spaced acreage. Rather, it provides that "the operator shall negotiate with the surface owner for the payment of any damages which may be caused by the drilling operation." §318.5(A) (emphasis added).

¶10 Furthermore, case law under the Act is clear that the damage standard intended by the Legislature is the diminution in fair market value of the entire surface property resulting from the drilling operations. Dyco Petroleum Corp. v. Smith, 1989 OK 51, ¶10, 771 P.2d 1006, 1008. See also Houck v. Hold Oil Corp., 1993 OK 166, ¶39, 867 P.2d 451 ("[I]t was not error to consider the effect the drilling operations may have on an entire tract, i.e. compensation is not limited only to the value of the land actually occupied by the drilling operations (access roads, drill site, etc.), but the diminished value of the entire tract caused by the drilling operations is a proper measure of damages under the Act.").[1]

¶11 The inclusion of land outside the unit in the damage appraisal does not interfere with the authority of the Corporation Commission. The Commission has statutory authority to protect correlative rights by establishing well spacing and drilling units and by regulating production from a common source of supply. 52 O.S. Supp. 2012 §87.1(a). This authority includes the power to appoint a unit operator. Charter Oak Prod. Co., L.L.C. v. Morgan, 2011 OK CIV APP 104, ¶8, 263 P.3d 325. However, the Commission has no jurisdiction to adjudicate disputes between private parties in which the public interest is not involved. Rogers v. Quiktrip Corp., 2010 OK 3, ¶7, 230 P.3d 853. The liability of one individual to another under the law is such a private dispute. Id. The extent of Operator's liability to Owner for damages caused by Operator's drilling operations is solely a matter for the district court. The trial court did not err in instructing the appraisers to determine the diminished value of Owner's entire tract caused by Operator's drilling operations.

B. Sufficiency of Appraisers' Report

¶12 Operator next contends the trial court erred in accepting the appraisers' report because it failed to set forth the quantity, boundaries, and value of the property entered on or to be utilized in the oil or gas drilling operation. Operator argues that §318.5(C) provides the report "shall" contain this information, and it is therefore mandatory. Without this information, Operator asserts it may not know what the appraisers considered to be the amount, location, and magnitude of damages caused by its operations. We agree.

¶13 Section 318.5(C) provides in part,

[The appraisers] shall inspect the real property and consider the surface damages which the owner has sustained or will sustain by reason of entry upon the subject land and by reason of drilling or maintenance of oil or gas production on the subject tract of land. The appraisers shall then file a written report within thirty (30) days of the date of their appointment with the clerk of the court. The report shall set forth the quantity, boundaries and value of the property entered on or to be utilized in said oil or gas drilling, and the amount of surface damages done or to be done to the property. The appraisers shall make a valuation and determine the amount of compensation to be paid by the operator to the surface owner and the manner in which the amount shall be paid.

(Emphasis added.) Generally the use of the word "shall" signifies a mandatory directive. Keating v. Edmondson, 2001 OK 110, ¶13, 37 P.3d 882. Here, the Legislature has used the term in each sentence of this subsection. Furthermore, in subsection 318.5(F), the Legislature has directed that a trial under the Act shall be conducted and judgment entered in the same manner as railroad condemnation cases, which are special proceedings that must be carried out in strict compliance with the statutorily prescribed procedure. State ex rel. Dep't of Transp. v. Lamar Cent. Outdoor, Inc., 2007 OK CIV APP 105, ¶9, 170 P.3d 551. Accordingly, we hold that the appraisers' report must strictly comply with the directives of §318.5(C). Because it did not, we reverse the trial court's order to the extent it denied Operator's exception to the report.

¶14 The proper measure of damages is the diminution in the fair market value of the surface property resulting from the drilling and maintenance operations. Davis Oil Co. v. Cloud, 1986 OK 73, ¶23, 766 P.2d 1347. As discussed in Part A above, the damages are not limited to the value of the land actually occupied by the drilling operations but also include the diminished value of the entire tract resulting from the drilling operations. The appraisers should delineate not only the area of land occupied by Operator's drilling operations, but also any other area affected by such operations. For both areas, the appraisers should set forth the value of the land immediately before Operator entered the property, and the value immediately after Operator's drilling operations, after applying the factors approved in Davis Oil Co. v. Cloud, 1986 OK 73, ¶22, 766 P.2d 1347, 1352.[2] The reduction in the fair market value of each area equals the difference between these two valuations and is the amount of compensation to which Owner is entitled. The appraisers have no authority to direct mitigation, but may award the cost to restore land to its former condition, with compensation for loss of use of it, only if this cost is less than the diminution in fair market value of the land. Houck v. Hold Oil Corp., 1993 OK 166, ¶33, 867 P.2d 451, 460.

C. Amount of Award

¶15 In its last contention of error, Operator challenges the amount of the award. Because we reverse and remand for a new appraisal, we need not address this contention.

¶16 For the foregoing reasons, the trial court's order is AFFIRMED to the extent it ruled that the appraisers should consider Owner's entire tract in determining damages. The order is REVERSED to the extent it denied Operator's exception to the appraisers' report. This matter is REMANDED with instructions to order a new appraisal in compliance with this opinion.

BUETTNER, J., and BELL, J., concur.

FOOTNOTES

[1] Examples of damages to the surface beyond the land taken for the the drilling site include the stigma of having an oil and gas operation on the property (Chesapeake Operating, Inc. v. Loomis, 2007 OK CIV APP 55, ¶¶15 and 16, 164 P.3d 254), and interference with a center pivot irrigation system, Dyco Petroleum Corp. v. Smith, 1989 OK 51, ¶10, 771 P.2d 1006.

[2] The jury instruction approved in Davis Oil Co. v. Cloud, 1986 OK 73, ¶22, 766 P.2d 1347, 1352, stated:

Factors which you may consider in determining damages include the following, if shown by a preponderance of the evidence:
1. The location or site of the drilling operations.
2. The quality and value of the land used or disturbed by said drilling operations.
3. Incidental features resulting from said drilling operations which may affect convenient use and further enjoyment.
4. Inconvenience suffered in actual use of the land by [Operator].
5. Whether the damages, if any, are temporary or permanent in nature.
6. Changes in physical condition of the tract.
7. Irregularity of shape and reduction, or denial, of access.
8. The destruction, if any, of native grasses, and/or growing crops, if any, caused by drilling operations.
These are not to be considered as individual items of damages, but as they may, in your opinion affect the fair market value of the tract after the drilling operations in this case.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2007 OK CIV APP 55, 164 P.3d 254, CHESAPEAKE OPERATING, INC. v. LOOMIS
Discussed
 2007 OK CIV APP 105, 170 P.3d 551, STATE ex rel. DEPT. OF TRANSPORTATION v, LAMAR CENTRAL OUTDOOR, INC.
Discussed
 2011 OK CIV APP 104, 263 P.3d 325, CHARTER OAK PRODUCTION CO. L.L.C. v. MORGAN
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 73, 766 P.2d 1347, 57 OBJ 2885, Davis Oil Co. v. Cloud
Discussed at Length
 1989 OK 51, 771 P.2d 1006, 60 OBJ 900, Dyco Petroleum Corp. v. Smith
Discussed at Length
 1993 OK 166, 867 P.2d 451, 65 OBJ 23, Houck v. Hold Oil Corp.
Discussed at Length
 2000 OK 86, 16 P.3d 1120, 71 OBJ 2896, ARROW TOOL & GAUGE v. MEAD
Discussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Discussed
Title 52. Oil and Gas
 Cite
Name
Level

 52 O.S. 87.1, Common Source of Supply of Oil - Well Spacing and Drilling Units
Cited
 52 O.S. 318.2, Definitions
Cited